# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>vs.<br>CAMERON BELL,<br>　　　　Defendant. | Case No. 2:15-cr-00054-JCM-CWH<br>**REPORT AND RECOMMENDATION** |

　　　　This matter is before the Court on Defendant Cameron Bell's Motion to Suppress (Doc. #19), filed on June 3, 2015.  The Government filed a Response (Doc. #21) on June 22, 2015. Defendant Bell filed a Reply (Doc. #23) on June 26, 2015.  The Court conducted an evidentiary hearing on July 29, 2015.  (Mins. of Proceedings (Doc. #26).)

## BACKGROUND

　　　　On February 3, 2015, at approximately 11:40 a.m, plain clothes Nevada Parole and Probation Officers Samuel Wright and Stanley Hardin were leaving the jail located in the vicinity of the Bridger Inn, located at the intersection of Main Street and Bridger Avenue in Las Vegas, Nevada.  Officer Wright testified that he saw a man shoot a gun in an alley behind the Inn.  The officers reported "shots fired" and drove towards individuals eventually identified as Bell and his wife, Mrs. Bell.  Metro dispatch initiated a radio call of the incident.

　　　　As Officers Wright and Hardin drove towards Bell and Mrs. Bell, Bell was carrying a pink backpack and Mrs. Bell had a duffle bag in her hands.  Officer Wright contacted the couple on Main Street south of Bridger Avenue.  He ordered Bell to come to the unmarked police vehicle.  He noticed that Bell and Mrs. Bell passed the pink backpack between each other.  Bell finally gave the pink backpack to Mrs. Bell and began to run north past Bridger Avenue.

///

Officer Hardin reportedly chased Bell northwest on Main Street toward the Golden Gate Casino, which is located northwest of Bridger Avenue.  Meanwhile, Officer Wright remained momentarily with Mrs. Bell.  Noting her injuries, Officer Wright requested medical assistance to his location.  He then left Mrs. Bell and also engaged in the foot pursuit.  Shortly thereafter, Bell was apprehended.

Las Vegas Metropolitan Police Officer M. Eddington testified that he heard the Metro radio dispatch regarding shots being fired, and responded to the area of Main Street and Bridger Avenue.  When he arrived, Bell was already in custody.  He then returned to the area in front of the Bridger Inn and discovered that Mrs. Bell was standing in the middle of Bridger Avenue, East of Main Street, hysterical, yelling, and bleeding from her face.  *See* Government Exhibit 6A (marked "Female," for the location of Mrs. Bell).  She resisted being removed from the street, and she was handcuffed.  Officer Eddington testified that Mrs. Bell did not have a pink backpack with her.  Other officers quickly arrived at the scene to provide assistance.  When medical assistance arrived, Mrs. Bell was placed on a gurney and then placed into the ambulance and transported.

Metro Officer G. Sittre testified that he heard the radio dispatch of shots fired, and responded to where Bell had been apprehended.  There, Officer Sittre was contacted by a Parole and Probation Officer, whose name he could not recall, who indicated that he believed he knew where a backpack was located, and that it may have evidence in it.  Officer Sittre then transported the Parole Officer back to the southwest corner of Main Street and Bridger, and saw a pink and black backpack unattended on the sidewalk near the road.  *See* Government Exhibit 6A (marked G with a circle, for the location of the backpack).  The Parole Officer identified the backpack as the one which had been carried by Bell.  Officer Sittre testified that when he arrived, he noticed that the backpack was partially open, and he could see a gun within the backpack.  He did not recall whether he manipulated the bag to be able to see the gun within the bag.  Officer Sittre considered the backpack to be abandoned as nobody was nearby, and he searched the backpack and found a firearm.

Bell is charged with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Indictment (Doc. #1).)  Bell moves to suppress the firearm

found in the backpack.  The parties agree that the issue for resolution is whether the backpack was abandoned.

## ANALYSIS

The Government contends that Bell abandoned the backpack and therefore lacks standing to challenge the search of the backpack.  In contrast, Bell contends he entrusted the backpack to his wife, thereby acting consistently with an intent to retain an expectation of privacy in the contents of the backpack.

"It is firmly established that warrantless searches of abandoned property do not violate the Fourth Amendment." *United States v. Burnette*, 698 F.2d 1038, 1047 (9th Cir. 1983) (citing *Abel v. United States*, 362 U.S. 217, 240-41 (1960)).  "Abandonment is primarily a question of intent, and intent may be inferred from words, conduct, and other objective facts." *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976).  "Abandonment [ ] is not meant to be interpreted in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search." *Id*.  Courts have upheld a finding of abandonment in cases that involved both a denial of ownership or interest in the property and a physical relinquishment of the property. *See United States v. Kendall*, 655 F.2d 199 (9th Cir. 1981) (collecting cases).  Whether a person entertains a reasonable expectation of privacy is to be determined by objective standards. *Id.* at 201.  The government bears the burden of demonstrating property is abandoned and therefore is not subject to Fourth Amendment protection. *U.S. v. Cortez-Rivera*, 454 F.3d 1038, 1041 (9th Cir. 2006) (quotation omitted) (stating that "the government bears the burden of justifying a warrantless search"); *United States v. Basinski*, 226 F.3d 829, 836-37 (7th Cir. 2000) (stating that the government bears the burden of demonstrating abandonment).

The Court finds that, under the totality of the circumstances, by handing his backpack to his wife when he was stopped by the Parole Officers, Bell entrusted the backpack to his wife.  By doing so, he did not abandon his expectation of privacy in its contents. *See Jackson*, 544 F.2d at 409 (stating that whether a person intended to abandon property may be inferred from conduct and other objective facts).

The inquiry does not end there.  There is no evidence that Bell gave Mrs. Bell any guidance on what to do with the backpack.  Nor is there any evidence that the backpack was locked or otherwise secured.  Given that Officer Sittre testified that the backpack was found partially open, with its contents partially displayed, it is reasonable to assume that Mrs. Bell had full control over, and access to, the backpack's contents.  Either Bell left the backpack open when he handed it to Mrs. Bell, or she opened the backpack.  Under either scenario, by handing the backpack to his wife, Bell gave his wife actual and apparent authority over the backpack and assumed the risk that she might permit others, including government agents, to access it.  *See United States v. Matlock*, 415 U.S. 164, 171 (1974) (stating that when the government seeks "to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."); *Frazier v. Cupp*, 394 U.S. 731, 740 (1969) (holding that the cousin of a defendant had actual authority to consent to the search of a duffel bag because the duffel bag was used jointly by the defendant and the cousin and was left in the cousin's house).[1]  Thus, once Bell handed Mrs. Bell the backpack, she was able to exercise actual and apparent authority over the backpack.  Given that Ms. Bell was able to consent to the search of the backpack, she was also fully capable of abandoning the backpack herself, and the Court finds that she did so, as set forth below.

The backpack was discovered at the southwest corner of Main Street and Bridger Avenue, and Mrs. Bell was located across the intersection and southeast of where the backpack was discovered.  *See* Government Exhibit 6A (circle marked G where the backpack with the gun was discovered, and marked "Female" where Mrs. Bell was located by Officer Eddington).  There is no evidence to suggest that law enforcement, or anyone else, moved the backpack.  The Court

---

[1] "Common authority . . . rests [ ] on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock,* 415 U.S. at 171 n.7.

therefore concludes, based upon the evidence presented, that after Bell ran north on Main Street and then across Bridger Avenue being pursued by the Parole Officers, Mrs. Bell must have proceeded north on Main Street.  *Compare* Government Exhibit 6 (X marks the spot where the Bells were confronted by the Parole Officers) *with* Government Exhibit 6A (circle and G at the spot where the backpack was discovered); *see also* Government Exhibits 2, 3, and 4 (showing location of backpack at intersection).  Mrs. Bell apparently dropped the backpack on the southeast corner of the intersection and then proceeded across the intersection and down Bridger Avenue until she was located by Officer Eddington, and eventually placed in an ambulance.  *See* Government Exhibit 6A (Mrs. Bell located where exhibit marked "Female.")   A reasonable person would conclude that when she dropped the backpack and walked away from it, Mrs. Bell relinquished her interest in the property and no longer retained a reasonable expectation of privacy in it at the time of the search.  She therefore abandoned the backpack.  Whatever expectation of privacy that Bell had in the backpack was lost as the result of his wife's abandonment of the backpack.

In his brief, Bell argues that when officers seized Mrs. Bell, she had the backpack with her, and she was forced to drop the bag when she was taken into custody.  The Court notes that if the actions to establish the abandonment are brought about by unlawful police conduct, then the abandonment cannot be considered.  *Jackson*, 544 F.2d at 409.  There must be a nexus between the allegedly unlawful police conduct and abandonment of property if the challenged evidence is to be suppressed.  *See United States v. Haddad*, 558 F.2d 968, 975 n.6 (9th Cir. 1977).  Abandonment of property in response to police investigation does not render abandonment involuntary.  *See United States v. Veatch*, 674 F.2d 1217, 1220-22 (9th Cir. 1981).

However, Officer Eddington testified credibly that Mrs. Bell did not have the backpack with her when Officer Eddington detained her and she was transported for medical care.  Significantly, the backpack was not co-located with Mrs. Bell, and there is no evidence that she dropped the bag as the result of police conduct.  Bell has not identified any particular improper conduct by the officers that caused the abandonment.  Indeed, the Court finds no infirmities in the police conduct that would render the abandonment involuntary.  The Parole Officers' initial contact Bell was not improper.  Police officers can approach individuals as to whom they have no reasonable suspicion

and ask them potentially incriminating questions as "mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S.429, 437 (1991).  Accordingly, law enforcement action did not cause the abandonment.

The Court therefore finds that Bell entrusted the backpack to Mrs. Bell, who subsequently abandoned the backpack.  Given that Bell did not have a Fourth Amendment interest in the abandoned backpack, the Court recommends that Bell's motion to suppress the firearm found in the backpack be denied.

## RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDED that Defendant Bell's Motion to Suppress Evidence (doc. #19) be DENIED.

## NOTICE

This Report and Recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this Report and Recommendation may file a written objection supported by points and authorities within fourteen days of being served with this Report and Recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the District Court's Order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 14, 2015.

**C.W. Hoffman, Jr.**
**United States Magistrate Judge**




N


GOVERNMENT EXHIBIT 6A









https://www.google.com/maps/@ 7/28/2015



GOVERNMENT EXHIBIT 2



