UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff(s),<br><br>    v.<br><br>CAMERON BELL,<br><br>                              Defendant(s). | Case No. 2:15-CR-54 JCM (CWH)<br><br>ORDER |

Presently before the court are the report and recommendation of Magistrate Judge Hoffman. (Doc. # 27). Defendant Cameron Bell filed an objection to the report and recommendation. (Doc. # 31). The United States filed a response (doc. # 39), and defendant filed a reply. (Doc. # 40).

**I.     Background**

On February 3, 2015, at or about 11:40 a.m., plain clothes Nevada Parole and Probation Officers Samuel Wright and Stanley Hardin (the "parole officers") were leaving a jail located near the Bridger Inn, located at the corner of Main Street and Bridger Avenue in Las Vegas, Nevada. Wright allegedly saw a man shoot a gun in an alley behind the Inn. After reporting the incident, the officers drove towards individuals later identified as defendant Bell and his wife.

As the officers approached, Mrs. Bell held a duffel bag and Mr. Bell was carrying a pink backpack. The officers made contact with the Bells on the side of Main Street, just south of Bridger Avenue, and Officer Wright ordered Bell to approach the vehicle. After some passing back and forth of the backpack between the Bells, defendant Bell gave the backpack to Mrs. Bell and took off running.

Initially, Officer Wright remained with Mrs. Bell while Officer Hardin pursued Mr. Bell toward the Golden Gate Casino. After requesting medical assistance for Mrs. Bell, who was

**James C. Mahan**
**U.S. District Judge**

bleeding from her face, Officer Wright joined in the chase. Thereafter, defendant Bell was apprehended.

Officer M. Eddington of the Las Vegas Metropolitan Police Department ("LVMPD") responded to an LVMPD radio dispatch regarding the incident. After finding Mr. Bell already in custody, Eddington proceeded to the area near Bridger Inn and apparently found Mrs. Bell in the middle of Bridger Avenue, east of Main Street, yelling hysterically and bleeding from the face. *See* Government Exhibit 6A (marked "Female" at the location at which Mrs. Bell was found). The officer testified that Mrs. Bell did not have a pink backpack with her at the time.

LVMPD Officer G. Sittre also responded to the radio dispatch, arriving at the scene of Mr. Bell's apprehension. There, one of the parole and probation officers contacted Officer Sittre and told him that he knew where a backpack that may contain evidence was located. The officers drove to the corner of Bridger and Main, where Officer Sittre apparently saw a pink backpack. The parole officer indicated that the backpack was the same one Mr. Bell had been carrying earlier. Officer Sittre testified that when he arrived, he noticed that the backpack was partly open. He testified that he could not recall whether he manipulated the open backpack, but that due to it being open, he could see the gun within the bag. The officer determined that the backpack was abandoned because no one was nearby. Based on that determination, he searched the backpack, discovering a firearm within.

Bell is charged with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. #1). He filed a motion to suppress the evidence found in the backpack. (Doc. # 19). The government filed a response (doc. # 21), and Mr. Bell filed a reply. (Doc. # 23). The parties agree that the issue for resolution in defendant's motion is whether the backpack was abandoned.

Upon review of the defendant's motion and the parties' arguments, Judge Hoffman found that the backpack had been abandoned and recommended that Mr. Bell's motion be denied. (Doc. # 27). Mr. Bell filed timely objections to the report and recommendation, arguing that Judge Hoffman erred by concluding that Mrs. Bell abandoned the backpack that Mr. Bell had entrusted to her. (*Id.*)

## II.  Legal Standard

A party may file specific written objections to the findings and recommendations of a United States magistrate judge made pursuant to Local Rule IB 1-4.  28 U.S.C. § 636(b)(1)(B);

James C. Mahan
U.S. District Judge

- 2 -

LR IB 3-2.  Where a party timely objects to a magistrate judge's report and recommendation, the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made."  28 U.S.C. § 636(b)(1).  The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  Id.

Pursuant to Local Rule IB 3-2(a), a party may object to the report and recommendation of a magistrate judge within fourteen days from the date of service of the findings and recommendations.  LR IB 3-2(a).  Similarly, Local Rule 7-2 provides that a party must file an opposition to a motion within fourteen days after service of the motion.  LR 7-2.

### III.  Discussion

"It is firmly established that warrantless searches of abandoned property do not violate the Fourth Amendment." *United States v. Burnette*, 698 F.2d 1038, 1047 (9th Cir. 1983) (citing *Abel v. United States*, 362 U.S. 217, 240-41 (1960)). "Abandonment is primarily a question of intent, and intent may be inferred from words, conduct, and other objective facts." *United States v. Jackson*, 544 F.2d 407, 409 (9th Cir. 1976). "Abandonment [ ] is not meant to be interpreted in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search." *Id*.

Courts have upheld a finding of abandonment in cases that involved both a denial of ownership or interest in the property and a physical relinquishment of the property. *See United States v. Kendall*, 655 F.2d 199 (9th Cir. 1981) (collecting cases). Whether a person entertains a reasonable expectation of privacy is to be determined by objective standards. *Id.* at 201.

The government bears the burden of demonstrating property is abandoned and therefore is not subject to Fourth Amendment protection. *U.S. v. Cortez-Rivera*, 454 F.3d 1038, 1041 (9th Cir. 2006) (quotation omitted) (stating that "the government bears the burden of justifying a warrantless search"); *United States v. Basinski*, 226 F.3d 829, 836-37 (7th Cir. 2000) (stating that the government bears the burden of demonstrating abandonment).

    A.    *Judge Hoffman's report and recommendation*

Judge Hoffman found that defendant Bell *did not* abandon the backpack. (Doc. # 37 at 3). The judge found that defendant Bell handed the backpack to his wife when the parole officers

asked him to approach their vehicle. (*Id.*) In doing so, Mr. Bell entrusted the backpack to Mrs. Bell and did not relinquish his expectation of privacy in it. *See Jackson*, 544 F.2d at 409; (*id.*)

Judge Hoffman went on, however, to find that Mrs. Bell *did* abandon the backpack. First, he found that after Mr. Bell began to flee north on Main Street, Mrs. Bell also proceeded north on Main Street, eventually crossing the intersection of Main and Bridger, then proceeding east on Bridger until she was located by Officer Eddington. (Doc. # 27 at 5). Judge Hoffman concluded that Mrs. Bell dropped the backpack on the southeast corner of Bridger and Main along the way, where Officer Sittre eventually encountered it.[1] (*Id.*) *Compare* Government Exhibit 6 (marking the location at which the Bells were initially confronted by the parole officers with a red "X") *with* Government Exhibit 6A (marking the spot where the backpack was discovered with a circle and a "G" and the location Officer Eddington found Mrs. Bell with the word "female").

Based on the foregoing, Judge Hoffman found that:

> A reasonable person would conclude that when she dropped the backpack and walked away from it, Mrs. Bell relinquished her interest in the property and no longer retained a reasonable expectation of privacy in it at the time of the search. She therefore abandoned the backpack. Whatever expectation of privacy that Bell had in the backpack was lost as the result of his wife's abandonment of the backpack.

(Doc. # 27 at 5).

B.  *Defendant's objections to the report and recommendation*

Mr. Bell's objections are based on the finding that Mrs. Bell abandoned the backpack.[2] Defendant argues that whether property has been abandoned is a factual question that requires (a) evidence of denial of ownership in the property and (b) evidence that the property was physically relinquished in a manner that demonstrates abandonment. (Doc. # 31 at 2). Bell contends that there is no evidence that Mrs. Bell ever denied ownership of the backpack. (*Id.*) He also maintains that she never physically relinquished the bag in a way that objectively demonstrated abandonment.

---

[1] In his motion to suppress (doc. # 19), defendant argues that Mrs. Bell had the backpack with her when officers seized her before transporting her for medical attention. (*See* doc. # 27 at 5). He contends that she was forced to drop the bag when taken into custody. (*Id.*) At the evidentiary hearing, however, Officer Eddington testified that she did not have the bag when he approached her on Bridger and detained her. (*Id.*) Defendant does not object to the finding in the report and recommendation that such testimony was "credible," and he does not now dispute that Mrs. Bell dropped the bag on the corner of Bridger and Main.

[2] Defendant Bell does not dispute that, as a legal matter, if Mrs. Bell did abandon the bag, his expectation of privacy in it was so too abandoned. *See Matlock*, 415 U.S. at 171; *Frazier v. Cupp*, 394 U.S. at 740.

**James C. Mahan**
**U.S. District Judge**

### i. Denial of ownership

Having reviewed the report and recommendation, as well as the evidentiary record before it, the court finds that Mrs. Bell neither claimed nor denied ownership in the backpack. Defendant Bell correctly points out that there is not any evidence that any of the officers involved ever questioned Mrs. Bell at all with respect to her ownership or control over the backpack.

The government is not in fact required, however, to prove both that Mrs. Bell denied ownership of the backpack *and* that she physically relinquished control over it in a way that demonstrated abandonment. *See Kendall*, 655 F.2d at 201–02 (collecting cases in which courts have upheld a finding of abandonment that involved *either* denial of ownership *or* physical relinquishment of the property, though sometimes both).³ Instead, under *Jackson*, denial of ownership is just one factor that contributes to the totality of the circumstances the court must consider in deciding whether, objectively, Mrs. Bell manifested an intent to so relinquish her interest in the backpack that she no longer retained an expectation of privacy in it at the time of the search. *See Jackson* at 409.

### ii. Physical relinquishment

Turning to the question of whether the evidence indicates that Mrs. Bell physically relinquished the backpack in a matter that demonstrated abandonment, defendant argues that the only evidence of abandonment put forth by the government is Officer Sittre's testimony that it appeared abandoned. (Doc. # 31 at 3). This is not the case. Photographic evidence and corroborating testimony from the other involved officers establish that the backpack was located approximately one-half block from the point where Mrs. Bell was found on Bridger Avenue.

Further, the evidence establishes that Mrs. Bell was contacted by officers on Bridger and detained, but did not mention the backpack, neither denying nor claiming responsibility for it. The evidence also shows that Officer Sittre's inspection of the bag was within her visual range. Finally, the evidence demonstrates that sometime between when Officer Hardin left her unattended at the scene of the first encounter with the Bells and when law enforcement later found her on Bridger

---

³ Defendant relies on the case *United States v. Nordling* for the proposition that both factors are required. *See* 804 F.2d 1466, 1469 (9th Cir. 1986). While both factors were present in that case, the opinion states that the abandonment determination is an objective inquiry to be made in light of the totality of the circumstances. *See id.* Denial of ownership and physical relinquishment are described only as "two important factors" to consider in evaluating the totality of the circumstances, not required elements. *Id.*

**James C. Mahan**
**U.S. District Judge**

- 5 -

Avenue, the bag that was last seen in her possession came to be lying on the ground between the two locations. Importantly, there is no evidence that she dropped the bag in response to any contact with law enforcement. *Cf. Jackson,* 544 F.2d at 409.

Based on the totality of the circumstances evinced by that evidence, Judge Hoffman found that Mrs. Bell had abandoned the backpack. In his objections, Mr. Bell puts forth two alternate explanations for Mrs. Bell dropping the backpack on the corner. (Doc. # 31 at 3–4). First, defendant argues that a reasonable person could instead conclude that Mrs. Bell *intentionally* left the bag with the intent of coming back for it later because she could not carry both bags across the street in light of the injuries described above. (*Id.* at 3). Alternatively, he argues that a reasonable person could conclude that Mrs. Bell *inadvertently* left the backpack on Main Street before crossing Bridger. (*Id.* at 4).

Mr. Bell presents plausible theories that provide *possible* explanations for how or why Mrs. Bell happened to leave the backpack on Main Street while she continued across Bridger and down the street. The court finds, however, that a reasonable person would instead conclude that she had abandoned the backpack.

First, the court notes that Mrs. Bell left the backpack in the middle of downtown Las Vegas, during the day, on a street corner. Leaving a bag unattended on a corner in downtown Las Vegas and walking half a block away is simply not consistent with an intent to retain a possessory interest in that bag. Mr. Bell relies on *United States v. Tolbert,* a Sixth Circuit case, for the proposition that an individual can leave a piece of luggage in one place with an intent to return for it later. *See* 692 F.2s 1041, 1044 (6th Cir. 1982). In *Tolbert*, the luggage was a checked bag left at an airport. *Id.* The court does not find that an airport baggage claim and the corner of Bridger and Main are analogous.

Moreover, Mrs. Bell did not cross the street, immediately set down the duffel bag, and then return for the backpack. She crossed the street and instead proceeded down Bridger. If she had set it down only because she was unable to cross the street with it, there would be evidence that after crossing the street, she attempted to return for the bag, or indicated to law or medical personnel that she had meant to get her bag. Instead, the evidence indicates she continued down Bridger Avenue, traveling approximately half a block before her apprehension without manifesting any intent to return for the bag.

**James C. Mahan**
**U.S. District Judge**

- 6 -

Further, Mrs. Bell did not objectively manifest any intent to return for the bag. *See Jackson*, 544 F.2d 409. Abandonment is a factual issue. *Id.* The question the court must answer is whether Mrs. Bell's words, acts, or other objective behavior indicated an intent to possess or abandon the bag. *Id.* Mr. Bell suggests that she did not intend to abandon the bag, but instead left it with an intent to return, but could not, or that she inadvertently forgot to return for the bag after intending to come back for it. (Doc. # 31 at 3–4). If such intent did exist, Mr. Bell must put forth objective evidence of her mindset.

Mr. Bell does not put forth any such objective evidence in his objections—instead, he offers speculation about her subjective intent without factual support. Indeed, despite the fact that Mrs. Bell could have seen officers securing the backpack, there is no evidence that she even noticed the officers doing so. She did not verbally object to the officer's actions around the area where she left the bag or even indicate to the law and medical personnel in her presence that it was her bag. This is not consistent with an intent to reclaim a bag she had placed on the ground only temporarily.

Having reviewed the evidentiary record put forth at Mr. Bell's motion hearing (doc. # 26) and conducted a *de novo* review of Judge Hoffman's report and recommendation, the court finds that Mrs. Bell abandoned the backpack. By dropping the bag and then walking away from it, she physically relinquished her interest in the property. *See Jackson*, 544 F.2d 409. After that point, she did not objectively manifest an intent to maintain a possessory interest in the bag. A reasonable person would therefore conclude that she so relinquished her interest in the backpack that she "no longer retained a reasonable expectation of privacy in it at the time of the search." *Id.*

**IV.     Conclusion**

Having found that Mrs. Bell abandoned the backpack, the court concludes that neither she nor defendant maintained an expectation of privacy in it. Officer Sittre's search of the bag was therefore lawful and appropriate. Mr. Bell's motion to suppress will be denied and Judge Hoffman's report and recommendation will be adopted in their entirety.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that that the report and recommendation of Magistrate Judge Hoffman (doc. # 27), be, and the same hereby are, ADOPTED in their entirety.

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

1       IT IS FURTHER ORDERED that defendant Cameron Bell's motion to suppress (doc. # 19) be, and the same hereby is, DENIED.

      DATED January 13, 2016.

                                  /s/ James C. Mahan
                              UNITED STATES DISTRICT JUDGE